Frank P. Sposedo, in Equity, *vs.* Charles F. Merriman et als.

Cumberland.   Opinion April 29, 1914.

*Appeal.   Decree.   Equitable Mortgage.   Equity.   Foreclosure.   Improvements.
Redemption.   Rents and Profits.*

1. It is the well established rule in this State that the decision of a single
   Justice upon matters of fact in an equity case should not be reversed, unless
   the appellate court is clearly convinced of its incorrectness, the burden being
   on the appealing party to prove the error.
2. There is good reason for the rule in our practice, as cases are now heard
   before a single Justice, mostly upon oral evidence, and when the testimony
   is conflicting, the Judge has an opportunity to form an opinion of the credi-
   bility of witnesses, not afforded the full court.
3. A failure to maintain all the allegations of the bill does not preclude the
   plaintiff from equitable relief if those sustained are sufficient to entitle him
   to a decree.
4. Since the statutes were enacted allowing much freedom as to amend-
   ments, it has been the general rule that no variance between the allegations
   and proof is to be deemed material, unless it is such as must have reason-
   ably misled the adverse party to his prejudice in maintaining his action or
   defense.
5. A mortgagee is not to be allowed for permanent improvements in the
   way of new structures not necessary for the preservation of the estate, or
   to make the premises tenantable, and made without the consent of the mort-
   gagor.

On appeal from final decree below.   Decree below affirmed with
additional costs.

This is a bill in equity, brought under the provisions of Revised
Statutes, chapter 92, section 15, to redeem certain real estate, situ-
ated at junction of Portland and Oxford Streets in Portland, Maine,
from certain conveyances claimed by the plaintiff to be equitable
mortgages, and which he has a right to redeem.   The cause was
heard by a single Justice of this court, who sustained the bill
against Percival P. Baxter, George E. MacGowan and Charles F.
Merriman and dismissed the bill as to James P. Baxter.   A final

decree was made and entered and the defendants, Percival P. Baxter, George E. MacGowan and Charles F. Merriman appealed from said decree to the Law Court.

The following facts appear to have been undisputed.

On the first day of March, 1911, the plaintiff was the owner of the premises subject to the following incumberances: (1) a mortgage for $5000 dated October 6, 1905, to the Portland Savings Bank; (2) a mortgage for $1000 dated October 6, 1905, to Edward K. Chapman, and (3) a mortgage for $1080 dated June 29, 1908, to said Chapman. Foreclosure proceedings of the $1080 mortgage had been instituted and the equity of redemption therefrom would expire March 4, 1911. On said March 1, 1911, the plaintiff to protect his interest in the property against said foreclosure entered into an arrangement whereby he conveyed the premises by quitclaim to Charles H. Allen and Clara M. Libby and they gave back to him a bond to reconvey the property to him at any time within one year upon payment to them of $3550 with interest thereon and all other sums that they might expend for taxes, etc., as therein provided for. From the $3550 the two Chapman mortgages were to be taken care of and some other obligations paid which the plaintiff was then owing. The Chapman mortgages were assigned to Allen and Libby. On June 5, 1911, the plaintiff assigned and transferred the bond for the reconveyance of the property given to him on March 1, 1911, by Mr. Allen and Mrs. Libby, to the same Mr. Allen. The instrument of transfer is absolute in form reciting as the consideration "one dollar and other valuable considerations." The plaintiff claimed that the consideration for the assignment was an agreement on Allen's part to pay certain bills against the property including interest and insurance amounting in all to $427.67, and Mr. Allen's answer to the question, "Tell just what consideration you gave for that assignment," was "That it shouldn't exceed $500." August 16, 1911, Percival P. Baxter procured an assignment of the $5000 mortgage from the Portland Savings Bank to himself, and on the same day he assigned it to George MacGowan, his clerk, and he holds it for him. October 10, 1911, MacGowan began foreclosure proceedings under that mortgage. October 5, 1911, Percival P. Baxter purchased from Mr. Allen and Mrs. Libby their interest in the propery and took a quitclaim deed from them to Merle R. Grif-

feth of Providence, Rhode Island, and on the same day the said Charles H. Allen assigned to said Griffeth all his right, title and interest in the bond for a deed given March 1, 1911, to the plaintiff by him and Mrs. Libby, and which the plaintiff had assigned to him on June 5, 1911. Subsequently, December 13, 1911, Merle R. Griffeth by quitclaim deed conveyed all his right, title and interest in the property to Charles F. Merriman, a clerk for Mr. Baxter, and he holds it for him.

The plaintiff claimed that the assignment and transfer from him to Charles H. Allen made June 5, 1911, of the bond for a deed that Mr. Allen and Mrs. Libby had given him on March 1, 1911 was given as security only for the advances that Allen was then to make amounting to less than $500, and that when Mr. Baxter on October 5, 1911, took the quitclaim deed from Mr. Allen and Mrs. Libby to Griffeth of their interest in the property, and also the transfer from Mr. Allen of his assignment of the bond for a deed, he knew that the plaintiff claimed that the transfer he had made to Charles H. Allen of his bond for a deed was given as security only, and that he had a right of redemption in the property.

On the other hand, it was claimed on the part of the defendants that the assignment and transfer of June 5, 1911 was unconditional and represented what was in fact an absolute sale to Mr. Allen by the plaintiff of all his interest in the property; and, further, that Mr. Baxter purchased the property without any notice or knowledge express or implied that the plaintiff claimed any right or interest therein.

The justice who heard the cause filed a full statement of the facts as found by him to have been proved, and thereupon ruled as follows (corrections of evident clerical errors bracketed) :

"On the foregoing facts, which are fully proved, I rule:

"That the plaintiff made a sufficient demand upon said MacGowan and Percival P. Baxter for a true account of the sum due on the mortgage dated August [October] 6, 1905, to the Portland Savings Bank, and assigned by said bank to said Percival P. Baxter August 16, 1911, and on the same day assigned by said Baxter to said MacGowan, and of the rents and profits and money expended in repairs and improvements, if any, and that they unreasonably refused or

neglected to render such account in writing, as required by statute, and that the plaintiff is entitled to redeem the premises described in his bill from said mortgage.

"That, the agreement between the plaintiff, Charles H. Allen and Clara May Libby, and the deed and bond dated May 11, [March 1,] 1911, constituted an equitable mortgage, and that said Allen and Libby were bound by their said agreement and bond to pay the two mortgages of Edward K. Chapman dated October 6, 1905, [and June 29, 1908,] respectively, and that said Allen and Libby having taken an assignment of said mortgages instead of paying them as they had agreed to do, and the amount due upon said mortgages having been made a part of the $3550 mentioned in said bond that the plaintiff was to pay said Allen and Libby to redeem said premises, that equity will consider done what ought to have been done, and as the parties agreed that said Allen and Libby should pay said Chapman mortgages, and that the money they paid said Allen and Libby, for which they took an assignment of said mortgages, paid said mortgages.

"That by the agreement between the plaintiff, Charles H. Allen and Clara May Libby, the deed and bond dated March 11, [March 1,] 1911, constituted an equitable mortgage, and that the plaintiff had a right to redeem from the mortgage by payment of the amount advanced by said Allen and Libby, according to the terms of said agreement.

"That by the agreement of June 5, 1911, and the assignment of the bond of Allen and Libby to said Allen by the plaintiff constituted an equitable mortgage between said Allen and the plaintiff, and that the plaintiff was entitled to redeem from said equitable mortgage.

"That when said Percival P. Baxter purchased said premises by quitclaim deed from said Allen and Libby and took an assignment of said bond from said Allen in the name of Merle R. Griffeth, in addition to the notice of the plaintiff's interest in the property given him by the plaintiff before that date, he had notice of the plaintiff's claim by the language of the deed and the language of the assignment of the bond; that the language used in said deed and assignment would lead an ordinarily prudent man, using ordinary care, to make further inquiries; that the circumstances of the case, if the

plaintiff had not notified him of his claim prior thereto, required an investigation upon the part of Mr. Baxter, and that there was no sufficient investigation on his part to justify him in claiming that he had no notice or reason to believe that the plaintiff had an interest in the property as to simply inquire of the person who was selling to him and who insisted upon inserting in the deed and assignment a clause that the purchaser should take care of the plaintiff's claim was not due diligence; that, under the circum-, stances, he should have inquired of the plaintiff; that he did not use ordinary caution and diligence, and that the notice in said deed and assignment was sufficient to notify Mr. Baxter and Mr. Griffeth that the plaintiff had an interest in said property, and that Mr. Griffeth and Mr. Merriman, to whom Griffeth conveyed to hold for Mr. Baxter, and Mr. Baxter all knew that Libby and Allen held the property as security, that they became equitable mòrtgagees and that the plaintiff is entitled to redeem said property from the equitable mortgage held by Mr. Merriman for the benefit of Mr. Baxter, which was conveyed to him by said Allen and Libby.

"That Mr. Baxter knew, and ought to have known had he exercised ordinary prudence, that he was only a mortgagee of the premises, and that he had no right to add to the burden of redeeming the property the cost of remodeling and rebuilding the building, as he did at an expense of some $13,000; that the buildings were remodeled and rebuilt with the expectation upon the part of Mr. Baxter that the plaintiff would not be able to redeem the premises from the foreclosure proceedings started by Mr. MacGowan upon the original Portland Savings Bank mortgage; that it was neither necessary for the preservation of the property, or done with the consent of the mortgagor, or to make the premises tenantable, and that he should not be allowed for the permanent improvements in the way of new structures not necessary for the preservation of the property made without the consent of the plaintiff. He is only entitled to be allowed for all improvements and repairs made by him that were necessary for the preservation of the estate, or to make the premises tenantable.

"That the bill be sustained, with cost, against Percival P. Baxter, George MacGowan and Charles P. Merriman, and discontinued as to James P. Baxter.

"That the case be sent to a master, to ascertain the sums due on the mortgages above specified and of the rents and profits received, or that would, by the exercise of ordinary care, have been received from the premises as they were when the possession was taken by said MacGowan for said Baxter, and for the money expended in repairs and improvements, if any.

"Decree according to the above."

Thereafter the following decree dated August 18, 1913, was signed and filed.

FINAL DECREE.

This cause came on to be heard June 25th, 26th and 27th, A. D. 1913, upon bill, answers, replications and proofs, and was heard and was argued by counsel; and thereupon, upon consideration thereof, It is *ordered, adjudged* and *decreed* as follows:

1. That the bill be sustained with cost against Percival P. Baxter, George E. MacGowan and Charles F. Merriman, and the bill is dismissed as to the defendant James P. Baxter.

2. That the plaintiff has the right to redeem the premises described in said bill from the mortgage dated October 6, 1905, from the plaintiff to the Portland Savings Bank, to secure a loan of $5000, recorded in Cumberland County Registry of Deeds, volume 750, page 212, and assigned August 16, 1911, by said Portland Savings Bank to Percival P. Baxter, by assignment recorded in Cumberland County Registry of Deeds, volume 859, page 453; and on the same date assigned by said Percival P. Baxter to George E. MacGowan by assignment recorded in Cumberland County Registry of Deeds, volume 859, page 454, the legal title to which mortgage is now held by said MacGowan for the use and benefit of said Percival P. Baxter.

3. That the quitclaim deed, dated March 1, 1911, given by the plaintiff to Charles H. Allen and Clara May Libby of all the plaintiff's interest in the premises described in the bill in this case, recorder in Cumberland County Registry of Deeds, volume 873, page 1, and the bond dated March 1, 1911, executed by said Allen and Libby to the plaintiff in the penal sum of $7000, recorded in Cumberland County Registry of Deeds, volume 878, page 38, are together adjudged and decreed to constitute an equitable mortgage, and the plaintiff has a right to redeem from said mortgage the

premises described in the bill, which was conveyed by said Allen and Libby October 5, 1911, to Merle R. Griffeth by deed recorded in Cumberland County Registry of Deeds, volume 884, page 8, and that said Merle R. Griffeth conveyed December 13, 1911, to Charles F. Merriman by deed recorded in the Cumberland County Registry of Deeds, volume 884, page 179, said Merriman holding the legal title for the use and benefit of said Percival P. Baxter.

4. That the assignment of the bond for $7000 given to the plaintiff by said Charles H. Allen and Clara May Libby, dated March 1, 1911, said assignment being recorded in Cumberland County Registry of Deeds, volume 878, page 39, constituted an equitable mortgage, and the plaintiff has a right to redeem the premises described in his bill from said equitable mortgage, the legal title of which is now held by Charles F. Merriman for the use and benefit of Percival P. Baxter, who is the equitable owner thereof.

5. That the said Griffeth in purchasing said property from said Allen and Libby acted as agent for said Percival P. Baxter; as also did said Merriman when he purchased from said Griffeth; and that the said MacGowan acquired said Savings Bank mortgage described in paragraph 1 of the plaintiff's bill at the request of said Percival P. Baxter.

6. That the said Percival P. Baxter, George E. MacGowan and Charles F. Merriman render an account as mortgagees in possession of the sums due the respondents on each of the mortgages above specified, and of the rents and profits received or that would, by the exercise of ordinary care, have been received from the premises described in the bill, as they were and from the time when possession thereof was taken by said MacGowan for said Baxter, and the money expended in repairs and improvements, if any; and of other expenditures properly made in accordance with the provisions of said bond.

7. That the case be referred to a master in Chancery, to take an account and make computations and ascertain the sum due to each of said defendants on said mortgages, to wit, the mortgage given by Frank P. Sposedo to the Portland Savings Bank, dated October 6, 1905, and assigned by said Portland Savings Bank to

Percival P. Baxter, and assigned by said Percival P. Baxter to George E. MacGowan; also the quitclaim deed given by Frank P. Sposedo to Charles H. Allen and Clara May Libby, dated March 1, 1911, and the $7000 bond from said Allen and Libby to said Sposedo, dated March 1, 1911, which together are adjudged to be an equitable mortgage, and deeded by quitclaim deed by said Allen and Libby to Merle R. Griffeth, and by said Merle R. Griffeth conveyed to Charles F. Merriman; also the assignment of the $7000 bond given by Charles H. Allen and Clara May Libby to Frank P. Sposedo and assigned by said Sposedo to said Charles H. Allen, and by said Allen assigned to said Merle R. Griffeth, and by said Merle R. Griffeth assigned to said Charles F. Merriman, which has been adjudged to be an equitable mortgage.

8. That the master take an account and make computations and ascertain the amount of the rents and profits received, or that would, by the exercise of ordinary care, have been received from the premises as they were and from the time when the possession was taken by said MacGowan for said Baxter, and of the money expended in repairs and improvements, if any. Said master in computing the amount due is to allow the defendants for all improvements and repairs made by them that were necessary for the preservation of the estate or to make the premises tenantable or that were made with the consent of the mortgagor, but the cost of remodeling and rebuilding the building, and the cost of making new structures on the premises are not to be allowed to the defendants except as above. In computing the amount due, the master is not to charge the defendants with any excess in the rents and profits received solely by reason of such improvements as the plaintiff is not required to pay for in redeeming the property. The master is also to allow such other expenditures as were properly made in accordance with the provisions of said bond.

9. It is further decreed that the defendants from the income of said premises shall keep the premises insured in a reasonable sum in such reliable insurance company or companies as they elect for the benefit of the plaintiff and defendants as their interests shall appear; also make such repairs as are necessary for the preservation of the estate or to make the premises tenantable; also pay the

water rates and taxes, and deduct the cost of said premiums, repairs, water rates and taxes from the income of the premises while in possession of the defendants.

10. It is further decreed that the plaintiff shall pay to the defendants the amount found by said master to be due to them, such payment to be made within sixty days from the date of the acceptance of the master's report, and the defendants shall thereupon surrender possession of said premises to the plaintiff, and the said Percival P. Baxter, George E. MacGowan and Charles F. Merriman shall execute and deliver a deed of release to the plaintiff of the premises described in said bill and referred to in the mortgage to the Portland Savings Bank and in the aforesaid equitable mortgages.

11. The bill is retained for any further orders that may be necessary as to an accounting between the parties.

*Dennis A. Meaher,* for plaintiff.

*George M. Seiders, and Verrill, Hale & Booth,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, KING, HANSON, PHILBROOK, JJ.

KING, J. The well established rule in this State is that the decision of a single Justice upon matters of fact in an equity case should not be reversed unless the appellate court is clearly convinced of its incorrectness, the burden being on the appealing party to prove the error. *Young* v. *Witham,* 75 Maine, 536; *Paul* v. *Frye,* 80 Maine, 26; *Sidelinger* v. *Bliss,* 95 Maine, 316; *Herlihy* v. *Coney,* 99 Maine, 469; *Railroad Co.* v. *Dubay,* 109 Maine, 29. In *Young* v. *Witham,* supra, Peters, C. J., well said: "There is good reason for the rule in our practice. Cases are now heard befort a single Judge mostly upon oral evidence. When the testimony is conflicting, the Judge has an opportunity to form an opinion of the credibility of witnesses, not afforded the full court. Often there are things passing before the eye of a trial judge that are not capable of being preserved in the record."

There were two issues of fact of essential importance in the case: First, whether the assignment, made June 5, 1911, by the plaintiff to

Charles H. Allen, of the bond for a deed, was made as security for a loan, or made as an absolute unconditional transfer of all the plaintiff's right in the property; and, second, whether Percival P. Baxter had notice prior to October 5, 1911, that the plaintiff claimed that the assignment of June 5, 1911, was given for security only. On both of those issues the oral evidence was very conflicting.

The plaintiff testified that the transfer of his bond for a deed to Mr. Allen was made in pursuance of an oral agreement between them whereby Allen was to furnish not exceeding $500 to pay certain specified bills, and he was to transfer the bond to him as security only for that loan or advancement. His testimony recites in detail the agreement, as he claims it was made. The incumbrances against the property at that time amounted to a little less than $9000, and the plaintiff claimed that it was worth $20,000, and that he had refused offers of $16,000 for it. Wesley M. Snow, testified that in the spring of 1911 he offered the plaintiff $16,000 for the property which he refused, and Fred M. Miller testified that he offered the plaintiff $16,000 for it during 1911.

On the other hand Mr. Allen testified that the assignment of the bond to him was not made for security but as an unconditional transfer of all the plaintiff's rights and interests in the property. And he claimed, and there was other testimony in behalf of the defendants tending to show, that the property at the time was much out of repair and that $9000 was a fair valuation of it.

As to the other issue, that of notice to Mr. Baxter, the oral evidence was also much in conflict. The plaintiff claimed that after he learned that Mr. Baxter had obtained an assignment of the $5000 mortgage he went to him and explained his interest in the property, and that he had a right to redeem it. On the other hand Mr. Baxter testified that the plaintiff had no such conversation with him at any time, and none whatever until after he had purchased the property from Allen and Libby. That after that time the plaintiff came to his office and asked if he had bought the property, and being told that he had, asked if he could get it back again, and that he told him he had bought it out-right in good faith and did not care to sell it to anybody. There was much other evidence introduced tending to support the contentions of the one side and the other on the issues of fact involved. But it will serve no useful purpose to

attempt here any detailed analysis of all the evidence, which we have carefully examined together with the exhaustive briefs of counsel.

The question now before this court on this branch of the case is not determined by a weighing and balancing of the conflicting evidence, as disclosed in the record, and ascertaining on which side it appears to preponderate. The court must be clearly convinced that the findings of fact by the single Justice are manifestly wrong, otherwise they must stand.

After full consideration of all the evidence, and applying the rule above stated, the court is not clearly convinced that the decision of the single Justice on the contested issues of fact in the case was wrong. He saw and heard the witnesses and had a better opportunity to judge of the weight of the conflicting testimony than this court now has.

1. The learned counsel for the defendants has argued several objections to the decree, some of which depend upon a state of facts which he contends was established by the evidence, but those objections necessarily appear to be unsustainable when examined in the light of the facts as found by the single Justice, and for that reason they need not be here particularly considered. Such is the objection that the assignment of June 5, 1911, cannot be declared to be an equitable mortgage "because the grantee, Charles H. Allen, had no intent that this conveyance be one for security only." The findings of fact however expressly show the contrary as to Mr. Allen's intention. Such also is the objection that the plaintiff has no right to redeem from the defendants because they are "bona fide purchasers" of the property. But as to that fact, too, the finding is otherwise.

2. The objection that the plaintiff is barred by his own laches from seeking to have the assignment of June 5, 1911, declared one for security only does not, we think, have sufficient support in the evidence. Moreover, the facts found are to the effect that prior to the purchase by Mr. Baxter from Allen and Libby of their interest in the property, including Allen's interest under the assignment of June 5, 1911, Mr. Baxter was notified of the plaintiff's claim that the assignment was given for security only, and was subject to redemption.

3. It is argued that there is a variance between the ground of relief set forth in the bill and that claimed by the plaintiff in his proofs. The variance claimed centers about the transfer of June 5th, 1911, and it relates to the allegations and proofs concerning the alleged oral agreement in pursuance of which that transfer is claimed by the plaintiff to have been made, and to the purpose, effect and validity of the transfer. The allegations of paragraph 4 of the bill are as follows:

"On or about the first day of June, 1911, an oral agreement was entered into between the plaintiff and said Allen whereby the plaintiff agreed to convey to Allen by way of security his interest in the premises, and said Allen agreed to advance to the plaintiff in cash such sum as should be needed, not exceeding a maximum amount of $500.00, to be used by the plaintiff to satisfy the claim of one H. F. Farnham Co., against the plaintiff, and to pay the claims of such other creditors as would agree to accept ten per cent of the face of their claims against the plaintiff in full settlement thereof; and said Allen further agreed that he would reconvey to the plaintiff the interest of the plaintiff so to be conveyed to him as aforesaid, at any time prior to March 1, 1912, when the plaintiff should repay to him the amount advanced as aforesaid. Said Allen agreed that the plaintiff should remain in possession of said premises and collect and retain the rents and profits therefrom."

In paragraph 6 it is alleged in substance that Mr. Allen did not give the plaintiff any writing expressing the terms of his oral agreement to reconvey the bond to the plaintiff; "nor did said Allen either on said June fifth, or at any time before or since, pay the plaintiff any consideration whatever in return for the instrument in writing executed by the plaintiff as aforesaid on June 5th." It is also alleged in paragraph 6 that the plaintiff was physically and mentally unable to understand the nature of his acts in signing the instrument, and to protect himself in respect to his own rights under the oral agreement previously entered into between himself and Allen. And it is also alleged that after June 5th the plaintiff obtained the assent of several of his creditors to accept ten per cent of their claims against him, and that when Mr. Allen was informed of that he repudiated and denied his agreement.

The plaintiff's proof was that the assignment of June 5th, 1911, was made as security, and that was found to be the fact by the single

Justice. But as to the bills that were to be paid by the money that Allen was to furnish, the plaintiff's proof differed materially from the allegations of the bill. He testified that the money so to be furnished was to pay interest to the bank of $75, an insurance bill which had been reduced by discount to $87.67, the bill of H. F. Farnham Co. of $87.50, and interest due Allen and Libby of $177.50, the whole amounting to $427.67; and he denied all the allegations of the bill as to a compromise of claims due his creditors on the basis of ten per cent, saying that he then had practically no other creditors, and that he did not understand why such allegations were made in the bill. There was evidence tending to show that the plaintiff was subject to frequent fits as the result of a previous serious injury, and that for a time after suffering a fit he was weak and somewhat incapacitated, but it was not shown that he had a fit on or about June 5th, 1911.

As to the allegation that Mr. Allen did not pay the plaintiff any consideration for the assignment of the bond, an explanation of it may be that it was an imperfect allegation of the fact, as testified to by the plaintiff, that Mr. Allen did not pay or furnish to the plaintiff personally any of the money that was to be furnished as the consideration for the assignment.

Variance, in its legal sense, means a substantial departure in the evidence adduced from the issue as made by the pleadings. It is a disagreement between the allegation and the proof in some matter which, in point of law, is essential to the claim relied upon for relief. *House* v. *Metcalf,* 27 Conn., 631. It is not indispensable to recovery that a party should make good his allegations to the letter. A failure to maintain all the allgegations of the bill does not preclude the plaintiff from equitable relief if those sustained are sufficient to entitle him to a decree. *O'Brien* v. *Murphy,* 189 Mass., 353, 357. Since the statutes were enacted allowing much freedom as to amendments it has been the general rule that no variance between the allegations and proof is to be deemed material unless it is such as must have reasonably misled the adverse party to his prejudice in maintaining his action or defense.

The important and essential allegation of the plaintiff's bill respecting the assignment to Allen of June 5, 1911, is that the trans-

fer was made "by way of security" for money to be furnished, not to exceed $500, to pay debts of the plaintiff. The proof adduced tended to sustain that allegation, and it was so found. If the allegations were not sufficient for the reception of that proof, the evidence could have been excluded, but we do not find that the question was raised in the court below. Such disparity as there appears to be between the allegations and the proof relating to the particular debts to pay which Allen was to furnish not exceeding $500 is not, we think, of vital importance. It relates to immaterial details rather than to the essential substance of the ground for relief relied upon and proved. Such disparity as there was bore upon the genuineness of the plaintiff's alleged claim, and upon his credibility as a witness, but the court is of opinion that it does not constitute such a material variance between the plaintiff's proof and the allegations of the bill respecting the essential claims relied upon for relief as can now avail the defendants in the appellate court.

4. It is further contended that the decree below is erroneous because it provided that the defendants are to be allowed only "for all improvements and repairs made by them that were necessary for the preservation of the estate or to make the premises tenantable or that were made with the consent of the mortgagor, but the cost of remodeling are rebuilding, and the cost of new structures on the premises are not to be allowed to the defendants except as above." It is not claimed that the provisions of the decree are not in conformity with the well settled rule that a mortgagee is not to be allowed for permanent improvements in the way of new structures not necessary for the preservation of the property and made without the consent of the mortgagor. *Bradley* v. *Merrill,* 88 Maine, 319.

It is urged, however, that Mr. Baxter purchased the property with a bona fide belief that he acquired the absolute title to it, and that the plaintiff's equity of redemption had become barred, and accordingly that an exception to the general rule as to compensation for permanent improvements should have been applied in this case. But the objection to the allowance of this contention is that the findings of fact do not sustain it. The decree is predicated on facts found that created a relation between the plaintiff and the defendants equivalent to the ordinary relation between mortgagor

and mortgagee. As applied to such a relation the provisions of the decree complained of are not erroneous.

5. Objection is also made that the decree provides that the defendants shall keep the premises insured for the benefit of the plaintiff and defendants as their interests may appear, make such repairs as are necessary for the preservation of the estate or to make the premises tenantable, and pay the water rates and taxes, and deduct the cost thereof from the income of the premises while in their possession. We do not think this objection should prevail.

Without doubt it is within the authority of the court, under the jurisdiction given it in equity by statute "for the redemption of estates mortgaged," in a proper proceeding to redeem, to make such decrees agreeably to equity and good conscience as may be deemed by it necessary to effect justice between the parties. And we think that under this bill to redeem, where the defendants were in possession and contested the plaintiff's right to redeem, and it was necessary to send the case to a master to ascertain the amount due the defendants, the court had authority over the income from the premises received pending the proceedings and could properly direct that it be used for the purposes specified in the decree. The provision will work justice rather than injustice between the parties.

6. Again, an objection is made because the decree provides that upon payment by the plaintiff to the defendants of the amount found due them, Baxter, MacGowan and Merriman shall execute and deliver to him a deed of release of the premises. The provision complained of was both proper and necessary, because the $5000 mortgage which was assigned to MacGowan has now been foreclosed, and the plaintiff gave a quitclaim deed of the premises to Allen and Libby who in turn conveyed, through Griffeth, to Merriman to hold for Baxter. Therefore such a deed of release as is provided for in the decree will be necessary to reconvey the record title to the plaintiff.

7. Lastly, it is contended that the decree should have provided that in case of failure on the part of the plaintiff to pay the sum found due the defendants within the time specified therefor in the decree, the bill shall be dismissed. It is the usual practice to provide, in the decree for redepmtion, for the dismissal of the bill in

case of failure of the plaintiff to pay within the time specified, and no doubt the omission in this case was inadvertent. The point urged in support of the contention is, that a decree dismissing the bill upon failure to pay within the time limited in the decree operates as a foreclosure of the mortgage, and that the defendants were entitled to such a provision for dismissal in this decree so that if the plaintiff fails to pay it will operate through the decree of dismissal as a foreclosure of the alleged mortgages.

In *Stevens* v. *Miner,* 110 Mass., 57, it was held, that no formal decree dismissing the bill is necessary to operate as a foreclosure of the mortgage, because that is the legal effect of the plaintiff's failure to pay within the time specified in the decree. This case is cited in *Pitman* v. *Thornton,* 66 Maine, 469, with the following quotation therefrom: "when a mortgagor obtains a decree of redemption his right is thereby defined, and no other or different right remains to him. It is the right of which he must avail himself, if he would redeem at all, and it is cut off when it expires by the terms of the decree." We do not think that the omission from the decree of an express provision for dismissal of the bill upon failure of the plaintiff to pay within the time limited in the decree is materially prejudicial to the defendants' rights. The decree fixes definitely the time within which the plaintiff must pay the amount found due by the master. If he does not so pay his right of redemption then expires, and becomes forever barred.

It is accordingly the opinion of the court that the decree below must be affirmed with additional costs, and it is,

*So ordered.*